IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:23CR3010 |
| | ) | |
| vs. | ) | INFORMATION |
| | ) | |
| MICHAEL GLASPIE aka "MIKE G," | ) | 18 U.S.C. § 1343 |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States Charges:

### INTRODUCTION

At times material herein:

### RELEVANT INDIVIDUALS AND ENTITIES

1. Neil Suresh Chandran was a resident of Las Vegas, Nevada. Chandran held himself out as the owner of a group of companies that operated under the banner of ViRSE, which purported to develop virtual-world technologies, including its own cryptocurrency, for use in its metaverse. These companies included, but are not limited to, FreeVi Lab; Studio Vi, Inc.; ViDelivery, Inc.; ViMarket, Inc. ("ViMarket"); and Skalex USA Inc. (collectively, "the Chandran Companies"). Chandran repeatedly claimed that one or more of the Chandran Companies was about to be purchased by a consortium of wealthy buyers, including multiple billionaires, and thereby yield his investors extremely high returns (hereinafter, the "Transactions"). Chandran's claims were false.

2. Defendant MICHAEL GLASPIE aka "MIKE G" was a resident of Palm City, Florida. GLASPIE marketed an investment opportunity with the Chandran Companies under the name "CoinDeal" or "Coin Deal" (hereinafter "CoinDeal") through a website in his own name and regular conference calls with prospective and current investors. He collected investor funds for

the Chandran Companies through various entities, including AEO Publishing, Inc.; Banner Co-Op, Inc.; and BannersGo, LLC ("BannersGo"), and then transferred the funds to the Chandran Companies.

3. Individual 1 was a resident of Lincoln, Nebraska, in the District of Nebraska. Individual 1 assisted GLASPIE in raising money for CoinDeal and by transferring investor money raised by GLASPIE to the Chandran Companies through his bank accounts and charges to credit cards in Individual 1's name that would be paid off with investor funds. Individual 1 routinely participated in GLASPIE's conference calls with current and prospective investors.

## THE SCHEME AND ARTIFICE TO DEFRAUD

4. Beginning in or around March 2020 and continuing through in or around July 2022, in the District of Nebraska and elsewhere, GLASPIE did voluntarily and intentionally, with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing the scheme and artifice to defraud, transmitted, and caused to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

## PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD

5. The purpose of the scheme was for GLASPIE to (a) unlawfully enrich himself and others by fraudulently obtaining funds from investors through false promises of guaranteed repayment with seven percent interest; (b) conceal or cause to conceal from investors the true status of their investments and the likelihood that they would need to avail themselves of GLASPIE's promised repayment; and (c) conceal or cause to conceal from the investors the manner in which GLASPIE and others were using investor funds.

## **MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD**

6. The ways, manners, and means of the scheme and artifice to defraud included, but were not limited to, the following:

  a. GLASPIE enticed investors to put money into CoinDeal with the false and fraudulent promise that, in the event the returns from CoinDeal failed to materialize, he would repay investors their money with 7% annual interest over three years. In fact, GLASPIE knew he had no means of making such repayments.

  b. To support his false and fraudulent promise of repayment, GLAPSIE made false statements to CoinDeal investors (1) that he had an exclusive and lucrative contract with AT&T to distribute government-funded phones when in truth and in fact he had no contract with AT&T, and (2) that an app he developed was being distributed by the Better Business Bureau ("BBB") and would yield over $400 million in revenue when in truth and in fact he had no distribution agreement with the BBB.

  c. To further entice investors to invest in CoinDeal, GLASPIE made materially false and misleading representations to investors that if the Transactions did not close, he would not send investors funds to Individual 1 to pass along to Chandran, when in truth and in fact, GLASPIE sent investor funds to Individual 1 even though the Transactions did not close.

  d. GLASPIE also made the false and misleading representations to CoinDeal investors that all money raised from investors would be sent to the Chandran Companies and/or Chandran, whom GLASPIE referred to as "the seller," and that he and Individual 1 never paid themselves, when in truth and in fact, GLASPIE misappropriated at least $2,424,971 of investor funds for personal purposes, including trading cryptocurrency, paying his employees' salaries, and buying a life insurance policy for a family member.

e.  After some investors began to question the veracity of GLASPIE's claims regarding the Transactions, such as whether the central bank of South Korea was in fact involved, GLASPIE made false and misleading statements to investors about the likelihood that the Transactions would close. On or around April 11, 2022, GLASPIE emailed Chandran and Individual 1, asking that Chandran not respond to investors' questions regarding CoinDeal because "my merchant account will be besieged with charge backs then: 1- they will sue me and I'll have to declare bankruptcy. 2 – I will be black listed and never get a merchant account again." GLASPIE also requested that Chandran "[p]lease just support me and rely on me having things under control and never say Korea is out. . . . please say 'while we pursue our sale' (NO HARM IN THIS) not 'a sale,'" as "the words 'a sale' could trigger the dreaded charge back nightmare."

f.  As a result of his scheme, GLASPIE fraudulently obtained more than $55 million in fiat and virtual currency from more than 10,000 investors.

## COUNT 1
(Wire Fraud)

7.  Paragraphs 1 through 6, including all subparagraphs, of this Information are realleged and incorporated by reference as if fully set forth herein.

8.  On or about March 7, 2020, within the District of Nebraska and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, Defendant MICHAEL GLASPIE aka "MIKE G," transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce the writings, signs, signals, pictures, and sounds, to wit, a conference call with an audience of CoinDeal investors and potential investors that was attended by GLASPIE and Individual 1, who was located in the District of Nebraska, on which GLASPIE falsely promised he would repay any investors in CoinDeal their funds over a three-year period with a 7% annual return.

All in violation of Title 18, United States Code, Sections 1343.

## FORFEITURE

9. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

10. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343 as set forth in Count One of this Information, Defendant MICHAEL GLASPIE aka "MIKE G" shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including up to $2,424,971.

11. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in paragraph 12.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

GLENN S. LEON
CHIEF, FRAUD SECTION

By: *William Johnston*
William E. Johnston
Assistant Chief
Tian Huang
Trial Attorney
1400 New York Ave. NW
Washington, D.C. 20530
202-514-0687
William.Johnston4@usdoj.gov

STEVEN A. RUSSELL
UNITED STATES ATTORNEY

By: _____
Donald Kleine
Assistant United States Attorney
District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, NE 68102