IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>vs.<br><br>MICHAEL GLASPIE aka "MIKE G,"<br><br>           Defendant. | 4:23CR3010<br><br>PLEA AGREEMENT |

    IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Glenn S. Leon, Chief of the Fraud Section of the Criminal Division of the United States Department of Justice, Assistant Chief William Johnston, and Trial Attorney Tian Huang, and Steven A. Russell, Acting United States Attorney, and Donald J. Kleine, Assistant United States Attorney, and defendant, MICHAEL GLASPIE aka "MIKE G," and Jeff Gorman, counsel for defendant, as follows:

# I
# THE PLEA

A.    CHARGE(S) & FORFEITURE ALLEGATION(S).

    Defendant agrees to plead guilty to Count I of the Information. Count I charges a violation of Title 18, United States Code, Section 1343.

# II
# NATURE OF THE OFFENSE

A.    ELEMENTS EXPLAINED.

    Defendant understands that the offense to which defendant is pleading guilty has the following elements:

COUNT I

    1.    The defendant voluntarily and intentionally devised or made up a scheme, or aided and abetted others to devise or make up a scheme,

    2.    The scheme was to defraud another out of money, property or property rights by means of materially false representations or promises;

1

3. The defendant did so with the intent to defraud, or to aid and abet others with the intent to defraud; and

4. The defendant used, or caused to be used, an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme.

B. <u>ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS</u>.

Defendant has fully discussed the facts of this case with defense counsel. Defendant and the United States agree to the below statement of facts, and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in the agreement and to establish the Sentencing Guidelines factors set forth in Section V below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct. Defendant admits that he has committed each of the elements of the crime.

1. Neil Suresh Chandran was a resident of Las Vegas, Nevada. Chandran held himself out as the owner of a group of companies that operated under the banner of ViRSE, which purported to develop virtual-world technologies, including its own cryptocurrency, for use in its metaverse. These companies included, but are not limited to, FreeVi Lab; Studio Vi, Inc.; ViDelivery, Inc.; ViMarket, Inc. ("ViMarket"); and Skalex USA Inc. (collectively, "the Chandran Companies"). Chandran repeatedly claimed that one or more of the Chandran Companies was about to be purchased by a consortium of wealthy buyers, including multiple billionaires, and thereby yield his investors extremely high returns. (hereinafter, the "Transactions"). Chandran's claims were false.

2. Defendant MICHAEL GLASPIE aka "MIKE G" was a resident of Palm City, Florida. GLASPIE marketed an investment opportunity with the Chandran Companies under the name "CoinDeal" or "Coin Deal" (hereinafter "CoinDeal") through a website in his own name and regular conference calls with prospective and current investors. He collected investor funds for the Chandran Companies through various entities, including AEO Publishing, Inc.; Banner Co-Op, Inc.; and BannersGo, LLC ("BannersGo"), and then transferred the funds to the Chandran Companies.

3. Individual 1 was a resident of Lincoln, Nebraska, in the District of Nebraska. Individual 1 assisted GLASPIE in raising money for CoinDeal and by transferring investor money raised by GLASPIE to the Chandran Companies through his bank accounts and charges

to credit cards in Individual 1's name that would be paid off with investor funds. Individual 1 routinely participated in GLASPIE's conference calls with current and prospective investors.

4. Beginning in or around March 2020 and continuing through in or around July 2022, in the District of Nebraska and elsewhere, GLASPIE did voluntarily and intentionally, with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing the scheme and artifice to defraud, transmitted, and caused to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

5. The purpose of the scheme was for GLASPIE to (a) unlawfully enrich himself and others by fraudulently obtaining funds from investors through false promises of guaranteed repayment with seven percent interest; (b) conceal or cause to conceal from investors the true status of their investments and the likelihood that they would need to avail themselves of GLASPIE's promised repayment; and (c) conceal or cause to conceal from the investors the manner in which GLASPIE and others were using investor funds.

6. GLASPIE enticed investors to put money into CoinDeal with the false and fraudulent promise that, in the event the returns from CoinDeal failed to materialize, he would repay investors their money with 7% annual interest over three years. In fact, GLASPIE knew he had no means of making such repayments.

7. To support his false and fraudulent promise of repayment, GLAPSIE made false statements to CoinDeal investors (1) that he had an exclusive and lucrative contract with AT&T to distribute government-funded phones when in truth and in fact he had no contract with AT&T, and (2) that an app he developed was being distributed by the Better Business Bureau ("BBB") and would yield over $400 million in revenue when in truth and in fact he had no distribution agreement with the BBB.

8. To further entice investors to invest in CoinDeal, GLASPIE made materially false and misleading representations to investors that if the Transactions did not close, he would not send investors funds to Individual 1 to pass along to Chandran, when in truth and in fact, GLASPIE sent investor funds to Individual 1 even though the Transactions did not close.

9. GLASPIE also made the false and misleading representations to CoinDeal investors that all money raised from investors would be sent to the Chandran Companies and/or

Chandran, whom GLASPIE referred to as "the seller," and that he and Individual 1 never paid themselves, when in truth and in fact, GLASPIE misappropriated at least $2,424,971 of investor funds for personal purposes, including trading cryptocurrency, paying his employees' salaries, and buying a life insurance policy for a family member.

10. After some investors began to question the veracity of GLASPIE's claims regarding the Transactions, such as whether the central bank of South Korea was in fact involved, GLASPIE made false and misleading statements to investors about the likelihood that the Transactions would close. On or around April 11, 2022, GLASPIE emailed Chandran and Individual 1, asking that Chandran not respond to investors' questions regarding CoinDeal because "my merchant account will be besieged with charge backs then: 1- they will sue me and I'll have to declare bankruptcy. 2 – I will be black listed and never get a merchant account again." GLASPIE also requested that Chandran "[p]lease just support me and rely on me having things under control and never say Korea is out. . . .  please say 'while we pursue our sale' (NO HARM IN THIS) not 'a sale,'" as "the words 'a sale' could trigger the dreaded charge back nightmare."

11. As a result of his scheme, GLASPIE fraudulently obtained more than $55 million in fiat and virtual currency from more than 10,000 investors.

12. On or about March 7, 2020, within the District of Nebraska and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, Defendant MICHAEL GLASPIE aka "MIKE G," transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce the writings, signs, signals, pictures, and sounds, to wit, a conference call with an audience of CoinDeal investors and potential investors that was attended by GLASPIE and Individual 1, who was located in the District of Nebraska.

13. On January 14, 2020, the Corporations, Securities and Commercial Licensing Bureau of Michigan's Department of Licensing and Regulatory Affairs (the "Bureau") issued an order to GLASPIE and his company, Banner Co-Op, Inc., to cease and desist from offering and selling unregistered securities in connection with CoinDeal. On June 4, 2020, GLASPIE entered into a consent order agreeing to not raise funds from investors in Michigan. Despite the entry of this consent order, GLASPIE knowingly violated the order by continuing to solicit and raise funds for CoinDeal from investors in Michigan through at least October 2021.

III

## PENALTIES

A.  COUNT I.  Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum 20 years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than three years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

IV

## AGREEMENT LIMITED TO FRAUD SECTION OF THE CRIMINAL DIVISION OF THE UNITED STATES DEPARTMENT OF JUSTICE

This plea agreement is limited to the Fraud Section of the Criminal Division of the United States and the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

V

## SENTENCING ISSUES

A.  SENTENCING AGREEMENTS.

Defendant understands that in determining the defendant's sentence, the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the Sentencing Guidelines range calculated by the Court or the range jointly recommended by the parties, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by

statute for the crime of conviction.  Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable).  Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

   a.  **Base Offense Level** - The parties agree that the defendant's base offense level under U.S.S.G. § 2B1.1(a) is 7.

   b.  **Specific Offense Characteristics –** The parties agree that the defendant, through the wire fraud scheme, caused losses of at least $55,000,000, and thus an increase of 22 levels under U.S.S.G. § 2B.1.1(b)(1)(I) applies.  The parties also agree that the offense involved 10 or more victims, was committed through mass-marketing, and/or resulted in substantial financial hardship to one or more victims, and thus, an increase of 2 levels under U.S.S.G. § 2B.1.1(b)(2)(A) applies.  The parties also agree that the offense involved a violation of a prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines, and thus, an increase of 2 levels under U.S.S.G. § 2B.1.1(b)(9)(C) applies.

   c.  **Acceptance of Responsibility** – If the defendant is found to be entitled to an offense level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

   d.  **Downward Departure** – The parties agree that a downward departure is warranted because the amount of loss overstates the seriousness of the offense due to the fact that a substantial number of investors invested primarily due to Neil Chandran's false statements rather than the defendant's own false promises and statements. In such circumstances, the gain to the defendant, $2,424,971, is a better measure of the defendant's true culpability, and thus the parties agree that a downward departure of six levels is appropriate.

B.   ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will not recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

**The parties further agree the defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.**

C.   ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

D.   CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category.

E.   "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

F. <u>RECOMMENDATION REGARDING CUSTODY</u>.

The United States will recommend that defendant be sentenced to a period of incarceration within the advisory guideline range as calculated by the United States pursuant to this agreement.

G. <u>STIPULATED REMOVAL</u>.

If defendant is not a United States citizen, or national, either before or immediately following sentencing, defendant agrees to an order of removal from the United States entered by Executive Office for Immigration Review or authorized Department of Homeland Security official. Defendant understands that defendant will not be removed until defendant has served any criminal sentence imposed in this or any other case. Defendant further waives any right to appeal, reopen or challenge the removal order.

H. <u>RESTITUTION</u>

The Defendant acknowledges restitution will be ordered as a part of the sentence in this case, and the Defendant agrees the Court may order restitution to all persons or organizations for loss or harm directly and proximately caused by the Defendant's relevant conduct regardless whether that person or organization is a victim of the offense of conviction. As such, it is understood the Defendant will be ordered to pay restitution of at least $54,647,930, joint and several with any restitution ordered in *United States v. Chandran*, 4:22-CR-3077 (D. Neb.).

VI

<u>**DEFENDANT WAIVES VENUE, APPEAL, AND COLLATERAL ATTACK**</u>

The defendant hereby knowingly and expressly waives any challenge to venue in the District of Nebraska. The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

(a) A claim of ineffective assistance of counsel.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

    (b)  The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

    (c)  The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement.  Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII
## **BREACH OF AGREEMENT**

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.  Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

# VIII
## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA

GLENN S. LEON
Chief, Fraud Section

1/20/23
Date

WILLIAM JOHNSTON
ASSISTANT CHIEF
TIAN HUANG
TRIAL ATTORNEY

STEVEN A. RUSSELL
Acting United States Attorney

2/14/2023
Date

DONALD J. KLEINE
ASSISTANT U.S. ATTORNEY

1-2023
Date

MICHAEL GLASPIE
DEFENDANT

1/20/23
Date

JEFF GORMAN
COUNSEL FOR DEFENDANT

11